IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Celina Bertovic, : 
                  Petitioner : 
                  : 
            v. : No. 1716 C.D. 2014
                  : Submitted: January 29, 2016
Workers' Compensation Appeal : 
Board (Apex Rehab Solutions, Inc.), : 
                Respondent : 


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI             FILED: February 18, 2016


        Celina Bertovic (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) decision granting Apex Rehab Solutions, Inc.'s (Employer) termination petition and denying Claimant's review and penalty petitions. For the reasons that follow, we affirm.


**I.**

        On July 28, 2009, Claimant, a physical therapist assistant working full-time for Employer, was helping a 6'3" 300-pound patient walk down a hallway when the patient's knees suddenly buckled. In response, Claimant caught the patient and

held him upright until a wheelchair could be retrieved. As a result, Claimant sustained injuries to her lower back, groin area, thigh and the lower extremities on her right side. Employer issued a Notice of Temporary Compensation Payable (NTCP) under the Workers' Compensation Act (Act)[1] classifying the injury as a "thoracic strain" and indicating that payments began as of August 26, 2009, and would end after a 90-day period on November 23, 2009.[2] On December 1, 2009, the NTCP converted to a Notice of Compensation Payable (NCP).[3]

Claimant continued working for Employer in a sedentary to light-duty capacity until May 24, 2011, when she was informed that a light-duty position was no longer available. Employer filed a petition to terminate compensation benefits based on Dr. Dennis W. Ivill's (Dr. Ivill) independent medical examination (IME) finding full recovery from her work injury as of April 26, 2011.[4] Claimant filed a petition to

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1–1041.4, 2501–2708.

[2] The NTCP indicated that the payments would be made from August 26, 2009, and would end after a 90-day period on November 23, 2009, where Claimant was to receive weekly compensation benefits in the amount of $655.43 based on an average weekly wage of $983.15.

[3] In January 2011, Claimant filed a penalty petition alleging that Employer violated the Act by failing to pay benefits when due. In April 2011, the parties entered into a supplemental agreement according to which Claimant returned to modified-duty work with a wage loss on November 12, 2010, and the parties agreed that Claimant was entitled to temporary partial disability benefits for the period of November 14, 2010, through March 20, 2011.

[4] Section 413 of the Act provides that a claimant's benefits may be suspended, modified or terminated based on a change in his or her disability:

> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon

**(Footnote continued on next page…)**

2

review medical treatment and/or billing, seeking to add a low back injury and femoral nerve injury to the defined work injury.[5]

## II.

Before the WCJ, Claimant testified that while working for Employer, she mainly worked with rehabilitation-to-home patients, patients with hip fractures, stroke patients, and patients needing short-term rehabilitation after pneumonia. Her main duties included lifting and transferring patients and helping them re-learn ambulation and other lost skills due to their medical conditions.

Claimant testified that immediately after sustaining her injury, Concentra physicians placed her on restrictive duty, gave her anti-inflammatories, and directed her to physical therapy which was ineffective. She also testified that she eventually began treating with Dr. Steven Morganstein (Dr. Morganstein), a physiatrist and pain management doctor, who referred her to another doctor for epidural injections which

---

**(continued…)**

> petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed....

77 P.S. § 772.

[5] In July 2011, Claimant filed a penalty petition alleging that Employer violated the Act by failing to reinstate Claimant's temporary total disability benefits and by failing to pay for Claimant's medical treatment relating to her work injury. Claimant filed a third penalty petition in March 2012, alleging that Employer failed to pay attorney's fees as ordered by the WCJ in an interlocutory order.

did not offer relief. She stated that she underwent other physical therapy which provided temporary relief, as well as treatment from a chiropractor and an acupuncturist.

Claimant also offered the deposition testimony of Dr. Morganstein, a board-certified physician specializing in physical medicine and rehabilitation. Dr. Morganstein testified that when he first saw Claimant in October 2009, Claimant was on light-duty restrictions, and when an attempt was made to increase Claimant's work activities, she began to exhibit more symptoms.

Dr. Morganstein also testified that he performed an EMG of Claimant in December 2009, the results of which were normal. He testified that Claimant had an MRI of the lumbar spine performed in May 2011, and the findings were similar to the prior MRI study. Dr. Morganstein stated that the results of an EMG performed in October 2011 showed a mild right femoral motor neuropathy across the inguinal area. He opined that as a result of her work-related accident, Claimant incurred a chronic sacroiliac joint dysfunction and a mild femoral nerve injury. He recognized that Claimant did not have any atrophy or any condition that would indicate that the femoral nerve injury was causing any loss of function, and that other than mild EMG findings, there were no other signs of the femoral nerve injury. Dr. Morganstein opined that due to her work injury, Claimant experienced lumbar myofascial pain, described as chronic pain.

However, Dr. Morganstein admitted that the basis for Claimant's work restrictions were Claimant's own complaints and reports of increased symptoms

4

when attempting to do more activity. He stated that Claimant's femoral nerve problem was his only concern with regard to her returning to regular-duty work because of her need to be on her feet or to squat in certain positions.

Based on his last evaluation of Claimant in December 2011, Dr. Morganstein stated that Claimant was neurologically intact and had no muscle atrophy. He testified that Claimant had only moderately limited active extension of her spine, but full range of motion of her legs, and that reports of Claimant's range of motion depended on Claimant's subjective reports of pain complaints. Dr. Morganstein also testified that Claimant had no palpable muscle spasms. He stated that Claimant's soft tissue injuries would be resolved within weeks, if not months, of the actual incident. Dr. Morganstein concluded that as of February 2012, Claimant's condition showed some improvement due to her treatment but that she continued to complain of pain.

Claimant also presented the testimony of Colleen Wurz, a physical therapist who has known Claimant since 1992 when they met at work. Ms. Wurz testified that Claimant requested that she accompany her to her IME with Dr. Ivill. In observing Dr. Ivill's examination of Claimant, she noted discrepancies between her observations and Dr. Ivill's report. Ms. Wurz stated that Dr. Ivill reported that Claimant did not complain of pain with strength testing when, in fact, she did complain. She testified that Dr. Ivill reported normal reflexes after patellar tendon reflex testing, but in reality, after four attempts of testing on each side, Claimant did not respond to the testing on the right and responded once to the testing on the left. She further pointed out that Dr. Ivill reported negative results for Faber's and

5

Patrick's tests, but that Claimant complained of pain, and he reported negative results for Thomas's and Ober's tests but did not perform either. Finally, Ms. Wurz testified that Dr. Ivill reported Claimant's straight-leg raise as 90 degrees but that she observed it to be 40 degrees.

In support of its position, Employer offered the deposition of Dr. Ivill, a board-certified physician specializing in physical medicine and rehabilitation.[6] Dr. Ivill examined Claimant in April 2011 and in conjunction with his examination, he took Claimant's medical history and reviewed Claimant's medical records. Dr. Ivill testified regarding the diagnostic studies conducted during the course of Claimant's treatment, concluding that the findings were normal and that they were "pre-existing degenerative changes." (Reproduced Record [R.R.] at 75a.)

Dr. Ivill further testified that the findings from his physical examination of Claimant were essentially normal, explaining that:

> Her low back exam revealed no abnormalities on inspection. She had no palpable spasm or trigger points. She had no pain with palpation over the spinous processes.
>
> Her range of motion was normal in her lumbar spine, except that she limited it actively. But when distracted and not being formally observed, she was able to range through the entire full range of motion and flexion/extension and lateral flexion.

---

[6] Dr. Ivill treats non-surgical musculoskeletal pain of all types but primarily the spine, which includes the neck, back and all four extremities. His work is 100 percent clinical and he sees approximately 25 to 30 patients every day, 20 days per month. Dr. Ivill also performs one to two IMEs per month.

> All joints of her lower extremities were normal with normal strength, reflexes and sensation. She had no signs of radiculopathy. Her EHL strength, or toe strength, was normal. She did complain of some right hip pain with flexion of the right hip.
>
> Measurements of her legs revealed she had no atrophy. Temperature testing of the legs revealed that the temperature was the same, and she had no signs of chronic regional pain syndrome.

(*Id.* at 75a-76a.)

Based on his examination and review of all records, diagnostic studies and Claimant's medical history, he opined that Claimant's work-related lumbosacral sprain/strain was resolved. Moreover, he did not find any evidence of a femoral nerve injury because Claimant had normal strength, normal reflexes and normal sensation, and she had undergone a normal EMG in December 2009. Further, if she had a femoral neuropathy after the EMG, it could not be causally related to her work injury. Dr. Ivill explained that Claimant's EMG nerve conduction studies did not show any evidence of a femoral nerve injury. He also testified that unlike Dr. Morganstein, he did not find any evidence of a right sacroiliac joint dysfunction. Finally, he opined that as of the date of his IME, Claimant had fully recovered from her work injury, Claimant did not need any additional treatment as a result of her work injury, and there were no restrictions on her ability to return to work.

Finding that Dr. Ivill's testimony that Claimant had fully recovered from her work-related injury the most credible, the WCJ granted Employer's termination petition, determining:

This Judge finds that Dr. Ivill conducted a thorough physical examination of [Claimant] and was afforded the opportunity to review [Claimant's] medical records. Based upon the credible testimony of Dr. Ivill, this Judge finds as fact that [Claimant] had fully recovered from the July 28, 2009 work injury as of April 26, 2011. Based upon Dr. Ivill's credible testimony, this Judge also finds that the July 28, 2009 work injury did not result in any additional condition, particularly a femoral nerve injury or a sacroiliac joint dysfunction. Dr. Ivill credibly testified that he found no evidence of either injury upon examination of [Claimant].

With regard to Claimant's review petition, the WCJ reasoned that Claimant failed to offer any credible unequivocal medical evidence to indicate that the work injury should be expanded to include any other conditions.[7]

## III

## A.

On appeal,[8] Claimant contends that the WCJ's findings of fact are erroneous and unsupported by substantial evidence and cannot support the WCJ's decision. Claimant points to four of the WCJ's findings of fact, specifically Findings

---

[7] The WCJ also denied Claimant's penalty petition, reasoning that Claimant failed to establish that Employer violated the Act with respect to the payment of either indemnity or medical benefits or that the contest was unreasonable. Claimant appealed to the Board, which affirmed.

[8] Our review of a decision of the Board is limited to determining whether errors of law were made, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Ward v. Workers' Compensation Appeal Board (City of Philadelphia)*, 966 A.2d 1159, 1162 n. 4 (Pa. Cmwlth. 2009), *appeal denied*, 982 A.2d 1229 (Pa. 2009).

8

of Fact Nos. 30, 31, 32 and 38, alleging that the findings are flawed, unsupported or altogether erroneous.

Finding of Fact No. 30 states, in pertinent part: "Dr. Morganstein opined that, as a result of the July 28, 2009 work injury, [Claimant] experienced lumbar myofascial pain, which would **not** be described as chronic pain." (R.R. at 110a) (emphasis added). Claimant points out, however, that Dr. Morganstein actually testified that, "I believe that she experienced myofascial pain which would **now** be considered chronic pain…." (*Id.* at 178a) (emphasis added.)

Finding of Fact No. 31 provides:

> On cross-examination, Dr. Morganstein agreed that [Claimant] has undergone two MRI studies, and both of these studies were basically normal. The doctor agreed that [Claimant] did not have any structural problems with her spine that was causing her problems. Dr. Morganstein also agreed that [Claimant's] two EMG studies did not show any evidence of radiculopathy or any problems emanating from the spine. **Claimant** agreed that [Claimant's] injuries were soft tissue injuries.

(*Id.*) (emphasis added). Claimant concedes that it is possible that the WCJ meant "Dr. Morganstein agreed that Claimant's injuries were soft tissue injuries" instead of "Claimant agreed…" but then goes on to argue that Dr. Morganstein's testimony was that "Claimant sustained a <u>combination</u> of soft tissue and non-soft tissue injuries, rendering Finding No. 31 erroneous." (Petitioner's Brief at 13) (emphasis in original.)

Finding of Fact No. 32 states, in relevant part: "Dr. Morganstein agreed that [Claimant] did not have any atrophy or **anything that would indicate that the femoral nerve injury was causing any loss of function**." (R.R. at 110a) (emphasis added.) Claimant argues that the first sentence is contrary to Dr. Morganstein's actual testimony regarding the femoral nerve diagnosis:

> Q. In layman's terms what is [mild right femoral neuropathy across the inguinal area], and does it cause pain, and where would the pain be?
>
> A. The femoral nerve comes across the front part of the groin area. The inguinal area is the area in the groin, and the nerve goes underneath a ligament there, and it's responsible to work on primarily the thigh region as far as muscle strength and sensation. And the results of the testing here showed that there was slowing of the conduction of that nerve through the neural ligament which then could affect the function of the muscles and nerve tissues in the thigh area.
>
> Q. Would that cause pain at all?
>
> A. Yes, it would result in pain along the course of that nerve.
>
> Q. And again where would that pain be in a layman's perspective?
>
> A. It would be across the anterior thigh to the level of the knee, and there may be some numbness sometimes along the inner part of the upper thigh region.

(*Id.* at 176a.)

Finding of Fact No. 38 states: "Dr. Ivill testified that he works 100% clinically full-time. Dr. Ivill estimated that he performs only one to two IMEs per month." (*Id.* at 112a.) Claimant contends that although this finding is accurate, these two sentences render Dr. Ivill's testimony incredible because it is impossible for Dr. Ivill to practice clinically 100 percent of the time and also perform one to two IMEs per month.

While Claimant highlights certain inaccuracies in the WCJ's findings in Findings of Fact Nos. 30 and 31, the inaccuracies are minor and may be the result of typing errors. With regard to Finding of Fact No. 32, although Dr. Morganstein indicates that Claimant's mild femoral neuropathy would cause her pain, his testimony does not suggest that it would cause her a loss of function which is what the WCJ found. Finally, with regard to Finding of Fact No. 38, Dr. Ivill's testimony that his work is 100 percent clinical but also that he performs one to two IMEs per month is unrelated to his steadfast opinion as to Claimant's medical condition. In any event, any of the errors are not substantial given that the WCJ accepted Dr. Ivill's testimony over that of Dr. Morganstein to terminate benefits.

**B.**

Claimant next argues that in denying her review petition, the WCJ capriciously disregarded objective medical evidence that supports the addition of low back injury and femoral nerve injury to the description of her work injury by disregarding certain portions of Dr. Morganstein's testimony.

11

Dr. Ivill credibly opined that after his physical examination and review of Claimant's medical records, he found no evidence of a femoral nerve injury. He explained that Claimant's December 2009 EMG was normal and that Claimant had normal strength, reflexes and sensation. He further stated that if Claimant had a femoral neuropathy after the December 2009 EMG, it could not be causally related to her work injury because it would have shown up in that EMG. Dr. Ivill concluded that Claimant had fully recovered from her work-related injuries.

A claimant has the burden of establishing that a condition is work-related and thus merits addition to the description of his or her work injury. *City of Philadelphia v. Workers' Compensation Appeal Board (Fluek)*, 898 A.2d 15, 17 (Pa. Cmwlth.), *appeal denied*, 911 A.2d 937 (Pa. 2006). Given that the WCJ credited Dr. Ivill's testimony over that of Dr. Morganstein, as is his prerogative, Claimant did not satisfy her burden, but rather, Employer established that Claimant is no longer disabled. As such, the WCJ properly denied Claimant's review petition and granted Employer's termination petition.

Accordingly, the order of the Board is affirmed.

_____
DAN PELLEGRINI, Senior Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Celina Bertovic,                  :
            Petitioner          :
                                       :
            v.                   : No. 1716 C.D. 2014
                                       :
Workers' Compensation Appeal     :
Board (Apex Rehab Solutions, Inc.),   :
            Respondent       :

# **O R D E R**

AND NOW, this 18<u>th</u> day of  <u>February</u>, 2016, the order of the Workers' Compensation Appeal Board dated August 26, 2014, at No. A13-0556, is affirmed.

_____
DAN PELLEGRINI, Senior Judge